# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

CARL SMITH, )
 )
        **Plaintiff,** )
 )
v. ) Case No. 14-CV-0412-CVE-FHM
 )
CAROLYN W. COLVIN, )
**Acting Commissioner, Social Security** )
**Administration,** )
 )
 )
        **Defendant.** )

## OPINION AND ORDER

Before this Court is the Report and Recommendation (Dkt. # 19) of Magistrate Judge Frank H. McCarthy recommending that the Court reverse the decision of the Commissioner of the Social Security Administration denying plaintiff Social Security disability benefits and remand for further consideration. Defendant has filed an objection (Dkt. # 20) to the report and recommendation and seeks affirmance of the Commissioner's decision. Plaintiff has not filed a response to defendant's objection, and the time to do so has expired.

## I.

On June 3, 2011, plaintiff applied for benefits, alleging that he had been disabled as of December 31, 2008.[1] Dkt. # 11-3, at 230. Plaintiff later amended the onset date to January 1, 2009. Id. Plaintiff also protectively filed an application for supplemental security income on May 15, 2011. Id. Both of plaintiff's applications stated that he suffered from physical and psychological

---

[1] Plaintiff previously filed an application for benefits on October 5, 2007 that was denied. Dkt. # 11-3, at 244. Plaintiff also had a period of disability from February 2004 through June 2005. Id.

conditions that left him unable to work, including right wrist impairment due to two resections of ulnar nerve neuroma, chronic fatigue since heart valve surgery, lumbosacral radiculopathy, headaches, depression, and anxiety. Id. at 232. Plaintiff's claims were denied initially on October 11, 2011 and on reconsideration on January 24, 2012. Dkt. # 11-4, at 3, 11. Plaintiff requested a hearing before an administrative law judge (ALJ) and that hearing was held on November 6, 2012. Dkt. # 11-3, at 230.

Plaintiff appeared at the hearing and was represented by an attorney. Id. Plaintiff was forty-five years old at the time of the hearing and lived with his wife and three minor children. Id. at 246-48. He testified to a variety of physical and psychological complaints, including depression, anxiety, high blood pressure, sciatica, chronic fatigue, and injuries to his right hand. Id. at 252-53. For these conditions, plaintiff took a number of medications, both prescription and over-the-counter. Id. at 253, 256. Plaintiff left school after the 10th grade and he did not earn a GED. Id. at 248.

The ALJ called vocational expert (VE) Bonnie Ward to testify about plaintiff's previous work history and his ability to work. Id. at 272. The VE testified that plaintiff had been a radial drill press operator and a warehouse worker. Id. at 273. The ALJ posed hypothetical questions to the VE, asking if a hypothetical person with specific restrictions would be able to perform either plaintiff's past work or other work available in the economy. Id. at 274-78. Among other restrictions, the hypothetical person needed to "alter position from time to time," "avoid rough, uneven surfaces, unprotected heights, fast and dangerous machinery," and only be exposed to "low light and low noise." Id. at 276-77. The VE stated that the hypothetical person could perform other occupations as described in the Dictionary of Occupational Titles (4th ed. rev. 1991) [DOT]; her representative examples of such occupations included: "parking lot attendant" (DOT § 915.667-

2

014), "rental clerk" (DOT § 295.357-018), "arcade attendant" (DOT § 342.667-014), "clerical mailer" (DOT § 209.587.010), and "order clerk" (DOT § 209.567-014) Id. at 275-76 However, a person with plaintiff's ailments as the VE had testified to them at the hearing would not be able to perform plaintiff's past work. Id. at 277.

On December 5, 2012, the ALJ issued a written decision finding plaintiff was not disabled. Id. at 238. The ALJ found that plaintiff had not engaged in substantial gainful activity since the application date, that he had severe impairments affecting his ability to work, and that his impairments were not equivalent to one of those listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. Id. at 232. The ALJ next formulated plaintiff's residual functional capacity (RFC), taking into account the medical evidence and testimony. Id. at 233-34. He found that plaintiff had the RFC to occasionally lift or carry up to 20 pounds, could stand/walk or sit for six hours in an eight hour work day, and could occasionally climb, bend, stoop, squat, kneel, crouch, crawl, push/pull with the right upper extremity and occasionally operate foot controls. Id. The ALJ found certain restrictions, including: exposure to low light and sound; avoidance of rough, uneven surfaces, unprotected heights, and fast, dangerous machinery; slight limitations while twisting his head and on his fingering, feeling, and gripping with the right upper extremity; and limitation to simple, routine, and repetitive tasks. Id. at 234. The ALJ found no restrictions relating to plaintiff's depression and anxiety. Id. He also found that plaintiff could perform other occupations present in the economy, specifically listing the parking lot attendant, rental clerk, arcade attendant, order clerk, and clerical mailer positions previously identified by the VE. Id. at 237. He concluded by stating that plaintiff "was capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Id.

3

On May 22, 2014, the Appeals Council denied plaintiff's request for review of the ALJ's decision. Dkt. # 11-2, at 2. Plaintiff thereafter sought judicial review, arguing that the ALJ committed several errors, including: his failure to include depression and anxiety in the RFC, his failure to express RFC limitations in terms of work-related limitations, and his failure to properly apply the treating-physician rule. Dkt. # 2, at 2. The Court referred the case to the magistrate judge, who entered a report and recommendation recommending the Court reverse the ALJ's decision and remand for further consideration. Dkt. # 19, at 11. Defendant has objected to the report and recommendation solely as to the magistrate judge's recommendation to remand the matter to the ALJ for consideration in the first instance of whether the position of clerical mailer exists in significant numbers in the economy.[2] Dkt. # 20, at 3.

## II.

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. However, the parties may object to the magistrate judge's recommendation within fourteen days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. FED. R. CIV. P. 72(b).

---

[2] Defendant's objection is silent as to the other issues addressed in the report and recommendation. Accordingly, the Court will not discuss those issues further. See 28 U.S.C. § 636(b)(1).

4

**III.**

The Social Security Administration has established a five-step process to review claims for disability benefits. See C.F.R. § 404.1520. The Tenth Circuit has outlined the five-step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004)]. If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." *Id.* An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." *Allen*, 357 F.3d at 1142. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work. *See id.* Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient residual functional capability to perform other work in the national economy. *See id.*

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).

The ALJ decided the case at step five of the analysis, concluding that plaintiff could not perform his past relevant work but that he could perform other work existing in the national economy. Dkt. # 11-3, at 230. Having so decided, the ALJ found plaintiff not disabled and denied his claims for benefits. Id. The magistrate judge recommended that the ALJ's decision be reversed and remanded. Dkt. # 19, at 11. The magistrate judge determined that, although the ALJ acknowledged the restrictions imposed by plaintiff's treating physician, he failed to incorporate them into the formulation of plaintiff's RFC. Id. at 8. The restrictions imposed by plaintiff's treating physician included a permanent restriction against lifting anything over fifteen pounds and a prohibition against using vibrating tools. Id. The magistrate judge determined that these restrictions excluded jobs requiring light exertion, including those of rental clerk, parking lot attendant, and arcade attendant. Id. at 9. The magistrate judge further found that, when applying the limitation for simple, routine and repetitive tasks, only the position of clerical mailer remained, of which there

5

were 5,000 positions available regionally and 92,000 positions available nationally. Id. at 10. The magistrate judge recommended reversing the ALJ's decision and remanding for further consideration of whether the available clerical mailer positions exist in a significant number. Id. In her objection, defendant contends that the ALJ's decision should be affirmed because, under the harmless error doctrine, the Court may determine the remaining available positions constitute a significant number. Dkt. # 20, at 3.

The Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if his decision is supported by substantial evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004). The court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

At step five, the ALJ must consider a claimant's RFC, age, education, and work experience to determine if other work exists in the economy that a claimant is able to perform. Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988). If the claimant can adjust to work beyond his past relevant work, the ALJ shall enter a finding that the claimant is not disabled. 42 U.S.C. § 423(d)(2)(A). However, the ALJ must find that a claimant is disabled if insufficient work exists in the national economy for an individual with the claimant's RFC. Wilson v. Astrue, 602 F.3d

1136, 1140 (10th Cir. 2010). The Commissioner bears the burden to present sufficient evidence to support a finding of not disabled at step five. Emory v. Sullivan, 936 F.2d 1092, 1094 (10th Cir. 1991).

The Tenth Circuit has emphasized that "the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation" and, as such, "the evaluation 'should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation.'" Allen v. Barnhart, 357 F.3d 1140, 1144 (10th Cir. 2004) (quoting Trimiar v. Sullivan, 966 F.2d 1326, 1330 (10th Cir. 1992)). However, the court in Allen also stated that "it nevertheless may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance . . . . Such an approach might have been open to us here had the number of available jobs identified by the VE not been one hundred but considerably greater." Id. at 1145.

The magistrate judge recommended remanding to allow the ALJ to consider in the first instance whether the number of available clerical mailer jobs constitutes a significant number. But the magistrate judge made this recommendation without considering whether 5,000 regional positions and 92,000 national positions constitute a significant number under the harmless error analysis. Before determining whether remand is appropriate, the Court must consider whether the harmless error doctrine applies. The Tenth Circuit has noted that "[h]armless error is seldom used to supply a missing dispositive finding . . . because this court must avoid 'usurping the administrative tribunal's responsibility to find the fact' and must not 'violate[] the general rule against post hoc justification of administrative action.'" Stokes v. Astrue, 274 F. App'x 675, 684

7

(10th Cir. 2008) (unpublished)[3] (second alteration in original) (quoting Allen, 357 F.3d at 1145). But the Tenth Circuit has applied the harmless error rule in instances in which the available jobs were of such numbers that the court could not conclude that "any reasonable factfinder . . . could have determined that suitable jobs did not exist in 'significant numbers.'" Shockley v. Colvin, 564 F. App'x 935, 940 (10th Cir. 2014) (unpublished).

Here, the number of available clerical mailer positions is 5,000 regionally and 92,000 nationally. Although the number of available positions does not fit neatly within the Tenth Circuit's prior decisions regarding harmless error, this number is considerably lower than those present in circumstances where the Tenth Circuit has determined, in the first instance, that particular positions existed in significant numbers in the economy. See Bainbridge v. Colvin, __ F. App'x __, 2015 WL 4081204, at *6 (10th Cir. July 7, 2015) (unpublished) (applying harmless error analysis and finding position existed in significant number when 20,000 were available regionally and 500,000 were available nationally); Shockley, 564 F. App'x at 940 (finding 17,000 positions available regionally and 215,000 available positions nationally constituted a significant number under the harmless error analysis); Stokes, 274 F. App'x at 684 (applying harmless error rule to determine that 11,000 positions available regionally and 152,000 positions available nationally constituted a significant number). The number of available clerical mailer positions is more analogous to the number of available positions in instances where the Tenth Circuit has declined to apply the harmless error doctrine, instead remanding to allow the ALJ to make the numerical significance determination. See Norris v. Barnhart, 197 F. App'x 771, 777 (10th Cir. 2006) (unpublished) (remanding to ALJ to

---

[3] This and all other unpublished decisions are not precedential; they are cited for their persuasive value only. See FED. R. APP. P. 32.1; 10TH CIR. R. 32.1.

determine in first instance whether 1,300-1,600 positions available regionally and 190,000-210,00 positions available nationally constituted a significant number); Chavez v. Barnhart, 126 F. App'x 434, 436 (10th Cir. 2005) (unpublished) (declining to apply the harmless error doctrine and remanding to the ALJ to determine whether 199 positions available regionally and 49,957 positions available nationally constituted a significant number). Mindful that "'the evaluation should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation,'" the Court declines to apply the harmless error doctrine and find that the number of available positions is significant as a matter of law. Allen, 357 F.3d at 1144 (quoting Trimiar, 966 F.2d at 1330). The Court thus leaves to the ALJ the numerical significance evaluation, allowing the ALJ to "give explicit consideration to the factors the [Tenth Circuit] has recognized should guide the ALJ's commonsense judgment." Id.

In summary, the Court finds that the ALJ's analysis at step five is incomplete and, for that reason, the ALJ's finding at step five is in error. On remand, the ALJ should determine, based on the specific facts of plaintiff's case, whether a significant number of clerical mailer positions are available.

**IT IS THEREFORE ORDERED** that the Report and Recommendation (Dkt. # 19) is **accepted as revised herein**, and the Commissioner's decision is **reversed and remanded** for further proceedings. A separate judgment is entered herewith.

**DATED** this 11th day of September, 2015.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE